UNITED STATES, Appellee

v.

James M. GREEN, Technical Sergeant
U.S. Air Force, Appellant

No. 09-0523

Crim. App. No. 37074

United States Court of Appeals for the Armed Forces

Argued January 12, 2010

Decided February 24, 2010

STUCKY, J., delivered the opinion of the Court, in which EFFRON,
C.J., and BAKER, ERDMANN, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain Andrew J. Unsicker (argued); Colonel
James B. Roan and Major Shannon A. Bennett (on brief); Captain
Tiffany M. Wagner.

For Appellee:  Captain Michael T. Rakowski (argued); Colonel
Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, and
Gerald R. Bruce, Esq. (on brief).

Military Judge:  Ronald A. Gregory

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

We granted review to determine whether Appellant's counsel was ineffective, and whether the United States Air Force Court of Criminal Appeals (CCA) erred in not granting Appellant's request for the victim's (CM) mental health records.  We hold that Appellant has failed to demonstrate prejudice under Strickland v. Washington, 466 U.S. 668 (1984).  Because Appellant has not demonstrated ineffective assistance of counsel, we need not reach the issue of whether the CCA erred in not obtaining CM's records.

I.

A panel of officer members sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of sodomy with a child between the ages of twelve and sixteen, three specifications of assault consummated by a battery of a child under the age of sixteen, and two specifications of committing indecent acts with a child under the age of sixteen, in violation of Articles 125, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 928, 934 (2006).  The members sentenced Appellant to a dishonorable discharge, confinement for four years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.  The convening authority approved the findings and sentence, and the CCA affirmed in an unpublished opinion.  United States v. Green, No.

2

ACM 37074, 2009 CCA LEXIS 54, 2009 WL 367577 (A.F. Ct. Crim. App. Feb. 10, 2009).

II.

Appellant's convictions largely stem from his conduct towards CM, his wife's younger sister. When CM was thirteen years old, she moved from her parents in order to live with Appellant and his wife. CM testified at trial that Appellant began sexually abusing her when she was fourteen years old, and this abuse continued for the next nine months. According to CM's testimony, this sexual abuse included regular sexual intercourse, fellatio, cunnilingus, and touching her vagina and breasts. CM's testimony also alleged that Appellant choked her, threw a remote control at her head, slammed a door into her shoulder, and hit her. CM's close friend, LS, testified that Appellant fondled her breast on one occasion. An Air Force Office of Special Investigations (AFOSI) agent and a forensic expert testified that Appellant's semen was found on the carpet in an area where, according to CM, Appellant ejaculated following one of their sexual encounters.

Immediately before CM moved in with Appellant, her parents forced her to spend approximately one and a half to two months at a lock-down facility called Lakeside Behavioral Health System (Lakeside). Appellant and his civilian defense counsel have submitted conflicting affidavits concerning what Appellant and

his wife had told the civilian defense counsel prior to trial about Lakeside. Appellant's affidavit claims that he told his civilian defense counsel that Lakeside was a psychiatric facility. The civilian defense counsel's affidavit states that Appellant and his wife never told her that Lakeside is a psychiatric facility. The CCA did not resolve the conflicting affidavits, instead finding that Appellant could not demonstrate prejudice from any deficiency in his counsel's performance regardless of whether the performance was actually deficient. Green, 2009 CCA LEXIS 54, at *8, 2009 WL 367577, at *3. The record does not disclose whether any mental health records relating to CM exist at Lakeside.

### III.

Appellant argues that he received ineffective assistance of counsel because his civilian defense counsel did not seek to subpoena CM's mental health records from Lakeside.

In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. Strickland, 466 U.S. at 687; United States v. Mazza, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted). We may address these prongs in any order we choose, because Appellant must meet both in order to prevail. Strickland, 466 U.S. at 697; Loving v. United States, 68 M.J. 1,

4

6 (C.A.A.F. 2009).  We review ineffective assistance of counsel claims de novo.  United States v. Anderson, 55 M.J. 198, 201 (C.A.A.F. 2001); United States v. Wiley, 47 M.J. 158, 159 (C.A.A.F. 1997).

In order to show prejudice under Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 698; Loving, 68 M.J. at 6-7.

The civilian defense counsel conducted a thorough cross-examination of CM in which she elicited the following information:  CM had spent between a month and a half to two months at a lock-down facility for children with drug and alcohol abuse problems or with significant behavioral problems; CM talked with her father every day and never told him about the alleged sexual abuse; CM initially said that she had sex with Appellant ten times a week, but she later reduced this number to two to three times a week; CM stated at the Article 32, UCMJ, 10 U.S.C. § 832 (2006), hearing that Appellant had not punched her in the face with his fist, even though she later testified on direct examination that he had punched her with his fist; CM had regular fights with Appellant and his wife because they grounded her too much for having bad grades and not doing work around the

house; and CM enjoyed her life with Appellant and his wife more than her life with her parents. Most notably, CM admitted during cross-examination that she had told someone that she had never had sexual intercourse or oral sex with Appellant and that Appellant had never touched her in any sexual sort of way.

Appellant's attorney was successful in obtaining his acquittal of seven of the thirteen specifications of which he was charged, and two of his convictions excepted the language charging that he committed offenses "on divers occasions." Appellant was not convicted of any offense for which CM's testimony was the only evidence.[1] For example, CM testified that Appellant had sexual intercourse with her twice a week for a year, but the members acquitted Appellant of the carnal knowledge charge. CM testified that she and Appellant had performed oral sex on each other five to six times; yet the members excepted "on divers occasions" from the specification and specifically noted that the conviction was based on the alleged instance of sodomy where AFOSI later identified semen on the carpet. CM testified to many occasions on which Appellant had committed indecent acts with her, but the members convicted Appellant of only two of the five specifications alleged. Both of these specifications stemmed from an incident in which

---

[1] In reaching this conclusion, we did not consider the post-trial statements of the court members to that effect.

Appellant grabbed CM's and LS's breasts when they were all in the room together.  Appellant was charged with four specifications of assaulting CM, yet the members only convicted Appellant of three of these.  LS testified that she witnessed the acts that resulted in two of these assault convictions, and the third was based on Appellant choking CM, which was corroborated by the AFOSI finding fluids on the floor where CM testified that she vomited during the choking episode.

We do not believe that CM's mental health records, if any existed, would have further discredited her to the extent that there is a reasonable probability that Appellant would have been acquitted of additional specifications.

IV.

In determining that there was no reasonable probability that the result of the trial would have been different if CM's psychiatric records had existed and had been introduced, the CCA noted that the court members had advised counsel in post-trial discussions that they had only convicted Appellant of offenses for which there was corroborating evidence.  Green, 2009 CCA LEXIS 54, at *8, 2009 WL 367577, at *3.  Courts in the military justice system may not consider members' testimony about their deliberative processes.  Military Rule of Evidence (M.R.E.) 509; M.R.E. 606(b); see United States v. Matthews, 68 M.J. 29 (C.A.A.F. 2009).  However, this error did not affect the factual

sufficiency review, and only affected the CCA's legal analysis to the extent that the CCA determined that Appellant had not met the prejudice prong of Strickland. This error does not affect our legal analysis because we review ineffective assistance of counsel claims de novo.

In light of our decision that Appellant suffered no prejudice from the failure of his counsel to obtain CM's mental health records, we need not determine whether the CCA erred in not granting Appellant's request to subpoena those records on appellate review. Appellant sought to obtain these records to support his argument that he received ineffective assistance of counsel. As Appellant did not demonstrate prejudice under Strickland, the issue of whether the CCA erred in not subpoenaing these records is moot.

V.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.