# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## CHRISTOPHER T. GRIFFIN
## INTELLIGENCE SPECIALIST SECOND CLASS (E-5), U.S. NAVY

### NMCCA 201300227
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 30 January 2013.
**Military Judge:** CDR John A. Maksym, JAGC, USN.
**Convening Authority:** Commander, U.S. Naval Forces Japan, Yokosuka, Japan.
**Staff Judge Advocate's Recommendation:** CDR T.D. Stone, JAGC, USN.
**For Appellant:** LT Jessica L. Fickey, JAGC, USN.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN; LT Ann E. Dingle, JAGC, USN.

### 20 May 2014

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of two specifications of abusive sexual contact in violation of Article 120(h), Uniform Code of Military Justice, 10 U.S.C. § 920(h). The military judge sentenced the appellant to reduction to pay grade E-1, a $50,000.00 fine, confinement for four years, total forfeiture of all pay and allowances, and a dishonorable

discharge. With the exception of the $50,000.00 fine, the convening authority (CA) approved the sentence as adjudged.

The appellant now alleges four assignments of error: (1) that the Staff Judge Advocate (SJA) violated RULE FOR COURTS-MARTIAL 1106, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) by not advising the CA of the legal errors raised by the defense in post-trial clemency submissions; (2) that his convictions for two specifications of abusive sexual contact are legally and factually insufficient; (3) that his trial defense counsel was ineffective; and, (4) that his sentence of four years' confinement and a dishonorable discharge is inappropriately severe.[1]

After careful examination of the record of trial and the pleadings of the parties, we are satisfied that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Factual Summary

On 8 April 2012, a group of Sailors from the USS GEORGE WASHINGTON (CVN 73) went out for drinks in an area of bars and night clubs in Yokosuka, Japan called the Honch. Among the Sailors in this group was the appellant and the victim, Intelligence Specialist Third Class (IS3) AS, who were co-workers and friendly acquaintances. The appellant knew IS3 AS was a lesbian, who was open regarding her sexual preference and in a committed relationship with another woman. That night the group went to a number of bars where they consumed alcoholic beverages. At some point that night a subset of this group, which included the appellant, IS3 AS, and Cryptologic Technician Technical Seaman (CTTSN) AN, went to a restaurant to get something to eat. CTTSN AN testified that while at the restaurant the appellant made comments of a sexually explicit nature and stated that he was afraid he would cheat on his wife as she was back in the United States. Record at 339-42. IS3 AS and CTTSN AN told the appellant that they would not let this happen and awkwardly laughed off the appellant's comments. *Id*. at 339. At no point during the night was there any flirting or romantic innuendos between the appellant and IS3 AS. *Id*. at 99–100, 342, 530.

---

[1] Assignments of error two through four are submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

2

At some point during the night IS3 AS, the appellant, CTTSN AN, and Hull Technician Second Class (HT2) LN left the Honch to go to HT2 LN's off-base residence. IS3 AS had been staying at HT2 LN's house in a spare bedroom for the past couple of months. Once at the house, the appellant was provided a pillow and blanket so he could sleep on the couch. IS3 AS indicated that she put on a movie to watch. IS3 AS testified that, as she sat on the couch, the appellant again made sexually explicit overtures to her, which she rejected. *Id.* at 61-62. The appellant denied ever making such sexual suggestions. *Id.* at 475.

IS3 AS left the appellant on the couch and went up to her bedroom to sleep. The appellant fell asleep on the couch but was awakened a short while later when a noisy group of Sailors entered HT2 LN's house. The appellant testified that he then went upstairs and knocked on IS3 AS's door and, upon obtaining permission, went in to go to sleep. After failing to find a space on the floor to sleep, he testified that he asked IS3 AS if he could sleep in the bed with her and that she gave him permission to do so. The appellant asserted that he fell asleep in bed with IS3 AS and was awakened when she rolled over and her body pressed up against his. *Id.* at 483-84. He testified that he then started kissing IS3 AS on her body and, after he kissed her stomach, she "slid her shorts off and slid her shorts down" and he began to perform oral sex on her. *Id.* at 486. After 10 to 15 minutes of performing oral sex on IS3 AS, the appellant testified that he moved to begin sexual intercourse with her but she told him to stop. *Id.* at 486-89. The appellant testified he stopped and rolled off IS3 AS onto the bed. *Id.* at 489.

IS3 AS testified that after she left the appellant downstairs, the next thing she remembers is being awakened by the appellant performing oral sex on her. She additionally asserts that she never invited the appellant up into her room or consented to any type of sexual activity with him. Additional facts necessary for the resolution of a particular AOE are provided below.

**Legal and Factual Sufficiency**

We begin with the appellant's second assignment of error in which he alleges that the findings of guilty of abusive sexual contact are legally and factually insufficient. The appellant does not allege there was insufficient evidence for any one element, but rather argues that the primary evidence against him, the testimony of IS3 AS, is not credible. The appellant,

3

in his brief, has presented a number of discrepancies and/or issues in IS3 AS's testimony and actions after the incident which, according to the appellant, undermine her credibility and render the evidence factually insufficient to sustain his convictions.

**The Law**

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ. Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict. *United States. v. Goode*, 54 M.J. 836, 841 (N.M.Crim.Ct.App 2001). The fact finders may believe one part of a witness's testimony and disbelieve another. *Id.* When weighing the credibility of a witness, this court, like a fact-finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake such as a lapse of memory or a deliberate lie. *Id*. at 844.

**Analysis**

There are two elements to the offense of abusive sexual contact upon a person who is substantially incapacitated: (1) that the accused engaged in sexual contact[2] with another person or caused sexual contact with or by another person; and, (2) that the other person was substantially incapacitated. Manual for Courts-Martial, United States (2012 ed.), App. 28, at ¶ 45b(8)(c).

Evidence adduced at trial indicated that the appellant made several sexual comments in the presence of IS3 AS throughout the evening and there was no evidence that she was receptive.

---

[2] Sexual contact is defined as the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person. *See* Art. 120(t)(2), UCMJ.

Additionally, the evidence showed that the appellant observed IS3 AS consume multiple alcoholic beverages throughout the night; one of the Sailors in this liberty group described the victim as intoxicated to the point that she was "kind of slurring her words, kind of stumbling around." Record at 346.

While the appellant's account of events differs greatly from IS3 AS's, the other witnesses do not corroborate his version of events. For example, after the appellant was awakened by the loud Sailors that entered HT2 LN's house, the appellant indicated that he went upstairs on his own accord, knocked on HT2 LN's bedroom door and asked him the location of the bathroom. *Id*. at 477. HT2 LN testified that he did not wake up after he went into his bedroom until the following morning. *Id*. at 291. Also, CTTSN AN indicated it was at her suggestion that the appellant went to IS3 AS's room to sleep on the floor to escape the group of noisy Sailors. *Id.* at 350. Finally, IS3 AS indicated that she did not give the appellant permission to enter her room after going to bed and did not consent to any sexual activity with him.

While the appellant argues that IS3 AS's account of the sexual assault varied, the most consistent aspect of her recollection of the events reflect that after a night of heavy drinking, she retired to her bedroom and was later abruptly awakened when the appellant initiated nonconsensual sexual contact with her. The appellant also suggests that because the victim's then-girlfriend pressured her into making an unrestricted report, that somehow suggests that the victim fabricated the event and should not be believed. We disagree.

After thoroughly reviewing of all of the evidence, we find that the military judge had a factual basis to find the appellant guilty beyond a reasonable doubt of abusive sexual contact. Taking into consideration that we did not see the witnesses personally, we find the evidence both legally and factually sufficient to find the appellant guilty beyond a reasonable doubt of the charge and specifications of which he was convicted at trial. We find this assignment of error to be without merit.

### Failure to Comment on Legal Error in SJAR

Closely related to the previous assignment of error, the appellant asserts that it was prejudicial error for the SJA not to submit an addendum to the SJAR in response to the defense's clemency submission that challenged the findings of guilty,

contending they were legally and factually insufficient.  As a remedy, the appellant requests that this case be remanded to the CA for new post-trial processing.

**The Law**

R.C.M. 1106(d)(4) requires that "'the staff judge advocate . . . state' in his recommendation 'whether, in' his 'opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate.'" *United States v. Hill*, 27 M.J. 293, 295 (C.M.A. 1988).  An analysis or rationale for an SJA's statements concerning legal error is not required and a response may merely consist of either a statement of agreement or disagreement with any legal error raised by the appellant.  R.C.M. 1106(d)(4). The Manual contemplates that errors may be raised by the accused for consideration by a CA, even though the recommendation of the SJA has already been served on the accused.  *Hill,* 27 M.J. at 295.  When the defense raises an allegation of legal error in a clemency submission, the SJA must advise the CA whether corrective action is required.  R.C.M. 1106(d)(4); *see also Hill*, 27 M.J. at 296.

**Analysis**

In most instances, failure of the SJA to prepare a recommendation with the contents required by R.C.M. 1106(d)(4) will be prejudicial and will require remand of the record for preparation of a suitable recommendation for the CA.  *Hill*, 27 M.J. at 296.  However, if the Court of Criminal Appeals is convinced that under the particular circumstances, a properly prepared recommendation would have no effect on the CA – the burden in this regard being on the Government – remand to the CA is unnecessary.[3]  *Id.*  Accordingly, if a defense allegation of legal error is presented after trial and clearly has no merit, the accused is not entitled to relief merely because of failure by the SJA to state specifically in his recommendation that the assigned error lacked merit or to submit an "addendum" addressing the error.  *Id.*

Because we found in the previous assignment of error that the evidence was legally and factually sufficient to support the

---

[3]  We note that in the general court-martial promulgating order, the CA specifically indicates that he considered the errors raised by the defense in the clemency petition and references an in-person meeting he had with the defense counsel on 26 April 2013.

findings of guilty beyond a reasonable doubt, this issue is without merit and there was no prejudice to the appellant by the SJA's failure to submit an addendum or to otherwise comment on the allegations of error. An addendum would not have had an effect on the CA in this case. Because the appellant was not prejudiced, returning this court-martial to the CA is not necessary.

## Ineffective Assistance of Counsel

The appellant also contends that he was denied effective assistance of counsel. The court "looks at the questions of deficient performance and prejudice *de novo*." *United States* v. *Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citations omitted). A military accused is entitled under the Constitution and Article 27(b), UCMJ, to the effective assistance of counsel. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007).

We analyze the appellant's claim of ineffective assistance of counsel under the test outlined by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687) (additional citation omitted).

Based on the appellant's post-trial submissions and our careful analysis of the record, we find the appellant's ineffective assistance of counsel assertions constitute nothing more than bare allegations and speculation concerning his military defense counsel's claimed errors and omissions. The record supports that the trial defense counsel rendered adequate assistance and exercised reasonable professional judgment in the pretrial, trial, sentencing, and post-trial representation he provided to the appellant. In light of the evidence in the record and the appellate filings, we conclude that the appellant has demonstrated neither deficient performance nor prejudice and decline to grant relief.

## Sentence Severity

In his final assignment of error, the appellant contends that his sentence to four years' confinement and a dishonorable discharge is inappropriately severe. The appellant requests that this court "suspend his punitive discharge and only approve

as much of his sentence as confinement for time served."
Appellant's Brief of 10 Sep 2013 at 19.

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *Unites States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States* v. *Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

After reviewing the entire record, we find that the sentence is appropriate for this offender and his offenses. *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005); *Healy*, 26 M.J. at 395-96; *Snelling,* 14 M.J. at 268.

## Conclusion

The finding and the sentence as approved by the CA are affirmed.


For the Court



R.H. TROIDL
Clerk of Court