# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

Before
**K.J. BRUBAKER, M.C. HOLIFIELD, A.C. RUGH**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**DANIEL L. HOCK**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201400417**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 14 July 2014.
**Military Judge**: LtCol L.J. Francis, USMC.
**Convening Authority**: Commanding General, 1st Marine Division (Rein), Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation**: Maj V.G. Laratta, USMC.
*For Appellant:* LT Ryan W. Aikin, JAGC, USN.
**For Appellee**: LT James M. Belforti, JAGC, USN; Capt Cory Carver, USMC.

**24 November 2015**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of violating a general order by providing alcohol to a minor, two specifications of rape, and one specification of aggravated sexual contact, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 920. The members sentenced the appellant to 35 years' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances and a

dishonorable discharge.  The convening authority disapproved five years' confinement but approved the remainder of the sentence as adjudged.

The appellant raises three assignments of error (AOE):  (1) the military judge erred when he denied a request for an expert consultant in the field of neuropsychopharmacology; (2) the military judge erred when he permitted members to call additional witnesses after the close of the case on the merits but prior to closing arguments; and (3) trial defense counsel was ineffective.  We disagree on all counts.

**Background**

On 23 December 2012, the appellant joined Ms. ARM, ARM's mother and her mother's boyfriend, Lance Corporal (LCpl) WY, for an evening in the barracks on board Marine Corps Air Ground Combat Center Twentynine Palms.  LCpl WY was restricted to the barracks, so he earlier invited ARM's mother to join him there.  She brought ARM, her 16-year-old daughter, who did not know the appellant.  ARM and ARM's mother also brought food (pizza) and assisted the appellant and LCpl WY in purchasing drinks (a twelve-pack of beer and a four-pack of specialty malt beverage liquor).

During the course of the evening, LCpl WY separately asked ARM and her mother if ARM liked the appellant or was interested in "hooking up" with him.  They both flatly rejected the idea.  Despite that, when the appellant asked if anyone wanted to play video games in his room, ARM agreed and left with him, alone.

After several minutes, LCpl WY experienced a "weird feeling" that something was wrong with ARM.[1]  He hurried to the appellant's room, pushed open the door, and discovered ARM naked and hysterical. She screamed, "I didn't want it!  I didn't want it!"[2]  The appellant quickly pulled up his underwear and claimed that ARM had just showered to explain her state of undress.

A scuffle erupted between LCpl WY and the appellant that was resolved by the arrival of the assistant barracks duty officer.  Both the duty officer and LCpl WY observed that ARM's hair and body were dry, and there was no other indication that she recently showered.

---

[1] Record at 506, 877.

[2] *Id*. at 879, 894.

2

Shortly after, ARM's mother comforted ARM and asked, "were you willing?"  Still distraught, ARM replied, "no."[3]  After showering ARM was transported to the hospital for a sexual assault examination.

The exam identified multiple injuries to ARM's genital area and anus from penetrating, blunt force trauma.  ARM also had bruises to her jaw and upper back and several "pinch-like" bruises to her breasts.  She described severe pain from her injuries.  The sexual assault nurse examiner described these sets of injuries as among the ten most severe she had ever observed while conducting a sexual assault examination.  Despite the severe degree of injury, ARM had no direct memory of what happened in the appellant's room.

The appellant too had "scratch-like" marks on his lower back.  A search of his room disclosed blood stains on his pillow.  Subsequent testing revealed ARM's DNA inside the crotch of the appellant's underwear and traces of semen on ARM's vaginal swabs.

## Denial of Expert Consultant

Before trial the defense moved to compel the assistance of two expert consultants in the field of toxicology and the field of neuropsychopharmacology and eyewitness memory. Neuropsychopharmacology was identified as the study of alcohol's effect on memory, an area the defense agreed overlapped with the field of toxicology.[4]

The defense argued a toxicologist was needed to evaluate the Government's anticipated toxicology evidence and to explain the relationship of alcohol to ARM's memory loss, a condition the defense referred to as a "blackout."[5]  The defense further asserted that a neuropsychopharmacologist was needed to "explain how the science of [alcohol] would affect eyewitness memory and memory cognition[.]"[6]

Trial counsel identified Dr. Eric Shimomura as the Government's expert toxicologist, and the military judge granted the appellant's request for a parallel toxicology consultant.  But the military judge denied the request for a neuropsychopharmacology consultant because

---

[3] *Id*. at 512.

[4] *Id*. at 110.

[5] *Id*. at 107.

[6] *Id*. at 109.

the defense made an inadequate showing of the necessity of a neuropsychopharmacologist as distinct from a toxicologist.

The Government identified Dr. Iain McIntyre as an expert toxicologist available for defense consultation. Coincidentally, Dr. McIntyre also had knowledge of neuropsychopharmacology as part of his toxicology background.[7]

The defense briefly consulted with Dr. McIntyre but did not call him as a witness at trial. After interviewing Dr. Shimomura, the Government disclosed potentially exculpatory testimony by Dr. Shimomura to the defense, and Dr. Shimomura was placed on the defense's witness list for trial. Dr. Shimomura was not called by either party as a witness, but did testify at the request of the members, a matter related to appellant's second AOE.

Analysis

The defense is entitled to an expert's assistance upon demonstration of necessity and a showing that "'denial of expert assistance would result in a fundamentally unfair trial.'" *United States v. Bresnahan*, 62 M.J. 137, 143 (C.A.A.F. 2005) (quoting *United States v. Gunkle*, 55 M.J. 26, 31 (C.A.A.F. 2001)). The appellant must prevail on both prongs by a "reasonable probability." *Id*.

The "necessity" standard has a three-part test under which the appellant "must show (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why the defense counsel were unable to gather and present the evidence that the expert assistance would be able to develop." *Bresnahan*, 62 M.J. at 143 (footnote omitted); *see also United States v. Freeman*, 65 M.J. 451, 459 (C.A.A.F. 2008).

"A military judge's ruling on a request for expert assistance will not be overturned absent an abuse of discretion." *Bresnahan*, 62 M.J. at 143 (footnote omitted). We find none here.

The appellant failed to show why a neuropsychopharmacologist was needed or what his or her assistance would accomplish for the defense. Likewise, the appellant failed to demonstrate that denial of a neuropsychopharmacologist resulted in a fundamentally unfair trial, especially since the defense was provided a toxicology

---

[7] This led to the parties occasionally, incorrectly referring to Dr. McIntyre as an "adequate substitute"——incorrect because Dr. McIntyre was provided as an expert toxicologist in his own right, and not as an "adequate substitute" for the appellant's proposed neuropsychopharmacologist.

consultant with experience in the relationship of alcohol to memory. The absence of an articulable distinction between the use of a toxicologist and a neuropsychopharmacologist in this case——both intended to address the effects of alcohol on memory——provided ample basis for the military judge to grant the former expert while denying the latter.  As a result, the military judge did not abuse his discretion.

**Member's Request for Testimony**

Before the assault, ARM's mother allowed ARM to have two beers. Unbeknownst to her mother, ARM also snuck at least half of a 24-ounce malt beverage with twelve percent alcohol by volume.  During the sexual assault examinations the next morning, medical attendants took blood samples from both ARM and the appellant.  These samples were tested for blood alcohol content (BAC) by the Armed Forces Medical Examiner System (AFMES).

After the case on the merits and the initial findings instructions but before closing arguments, a member requested additional evidence on the BAC test results.[8]  The Government proposed introducing chain of custody testimony and additional testimony from Dr. Shimomura, an AFMES toxicologist, to place the BAC results in context.

Relying on *United States v. Clifton*, 71 M.J. 489 (C.A.A.F. 2013), the military judge balanced the availability, relevance, and admissibility of the proposed testimony.  He also sought out the positions of the parties.

Initially, the defense supported the member's request, viewing the testimony as potentially exculpatory.  However, after an evening recess, the defense changed positions and objected to the testimony, citing tactical decisions made during the case on the merits.  In other words, the defense did not want the testimony admitted.

The military judge then correctly advised, in light of *Clifton,* that opposing the admission of the testimony might waive issues on appeal arising from its non-admission.  He asked the defense if they understood the potential for waiver.  The defense persisted in opposing the testimony while refusing to acknowledge that waiver might occur if the testimony was not admitted.  When the defense refused to acknowledge the potential for waiver, the military judge granted the member's request for additional evidence.

---

[8] Earlier in the trial, the military judge had already granted a member's request to introduce additional testimony.  .  Record at 790.

The chain of custody witness and Dr. Shimomura both testified. Dr. Shimomura was not permitted to discuss the meaning of the BAC test results until the defense raised the issue on cross-examination. Subsequently, he provided expert opinions on ARM's and the appellant's BAC test results. Both the Government and defense cited Dr. Shimomura's testimony during closing argument to equivalent beneficial effect.[9]

## Analysis

Article 46, UCMJ, gives panel members the "opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Under RULE FOR COURTS-MARTIAL 921(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) "[m]embers may request that the court-martial be reopened and that . . . additional evidence [be] introduced. The military judge may, in the exercise of discretion, grant such request." In addition, MILITARY RULE OF EVIDENCE 614(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), allows members to request to call or recall witnesses to testify at a court-martial. *Clifton*, 71 M.J. at 491.

A military judge may not summarily deny a member's request to recall witnesses for further questioning. *United States v. Lampani*, 14 M.J. 22, 26 (C.M.A. 1982). Instead, the military judge must consider factors such as "'[d]ifficulty in obtaining witnesses and concomitant delay; the materiality of the testimony that a witness could produce; the likelihood that the testimony sought might be . . . privilege[d]; and the objections of the parties to reopening the evidence' before ruling." *Clifton*, 71 M.J. at 491-92 (quoting *Lampani*, 14 M.J. at 26).

We review a military judge's ruling on a panel member's request to recall a witness for abuse of discretion. *Clifton*, 71 M.J. at 491; *United States v. Carter*, 40 M.J. 102, 104 (C.M.A. 1994).

Here, the military judge correctly identified the factors to be weighed. He invited the parties' objections and balanced them with the availability, admissibility and relevance of the testimony sought. In doing so, he correctly exercised his discretion in granting the member's request for additional evidence and did not abuse his discretion.

## Ineffective Assistance of Counsel

---

[9] *Id*. at 1009, 1051.

The day after the assault, the appellant was interrogated by agents from the Naval Criminal Investigative Service (NCIS). Afterwards, the appellant executed a Permissive Authorization for Search and Seizure (PASS) authorizing agents to conduct a search of his barracks room and to seize "any property or papers found during the search" desired for investigative purposes.[10] Following a thorough search of his barracks room and the surrounding areas, agents seized numerous objects including alcohol containers, the aforementioned bloody pillow, and the appellant's non-password protected computer.

The appellant never objected to the seizure of his computer, never sought to withdraw his permissive authorization to seize his property, and never requested his computer's return at any time.

Forensic analysis of the appellant's computer uncovered recent internet searches for a Japanese animated videogame named "Rape***." The "Rape***" game had as one of its objectives the stalking and rape of a mother and two daughters. During the week before the assault, the appellant searched for descriptions of the game and attempted to download it to his computer. It was unclear whether the appellant ever successfully played the game.

The parties litigated the admission of the forensic examiner's testimony about "Rape***" under MIL. R. EVID. 404(b), and the military judge permitted some limited testimony about the search, subject to the following instruction given at the time of the testimony:

> Members, I have previously described for you the definition of "hearsay." I told you "hearsay" means a statement that the declarant does not make while testifying in the current trial or hearing and a party offers into evidence to prove the truth of the matter asserted in a statement. I also told you that absent an exception or exemption "hearsay" is inadmissible.
>
> [The forensic examiner] just testified that he found a search conducted on the accused [sic] computer that occurred on 19 December 2012 at 10:18 a.m. at the website [URL omitted]. [The forensic examiner] described he searched this same site and found a description of the object of the game Rape[***]. You may not consider the information he found for the truth of the matter asserted, meaning what the object of the game really is, but rather only as circumstantial evidence that the accused may have

---

[10] Appellate Exhibit X at 10.

visited the same website and may have read the same information concerning the object of the game.

Of course you're free to determine that this information has no bearing at all on this case and disregard it.  It is up to you to determine the weight you give circumstantial evidence.[11]

Later, the military judge instructed the members that they could consider this evidence:

[F]or the limited purposes of its tendency, if any, to:  Prove that the accused intended to rape or sexually assault [ARM]...; determine whether the accused had a motive to commit the offense of rape...; or rebut the contention that the accused's participation in the offenses against [ARM] was as a result of ignorance or mistake.

You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged.[12]

Both sides briefly discussed the testimony during closing argument with trial defense counsel effectively diffusing its impact with an analogy to another violent, yet popular videogame.  The testimony received only passing reference from either side in presentencing arguments.

The appellant now alleges that trial defense counsel's failure to file a motion to suppress evidence gained from the forensic review of the appellant's computer amounted to ineffective assistance.  We disagree.

Analysis

Counsel are presumed to be competent, and therefore, our inquiry into an attorney's representation must be "highly deferential" to the attorney's performance and employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see also United States v. Cronic*, 466 U.S. 648, 658 (1984).

---

[11] Record at 828.

[12] *Id*. at 938.

We review "the questions of deficient performance and prejudice *de novo*." *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citations omitted). To prevail on a claim of ineffective assistance of counsel, the appellant must demonstrate two things.

First, the appellant must show that his counsel's performance was deficient. *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010)*; see also Strickland* 466 U.S. at 688 (finding that the Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms"). When the alleged deficiency is a failure to raise a motion, we evaluate the likelihood of that motion's success. *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001).

Second, the appellant must show that the deficiency resulted in prejudice. *Green,* 68 M.J. at 361. To establish prejudice, the appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome. . . .'" *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Instead, a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

When reviewing ineffectiveness claims, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant. *Strickland*, 466 U.S. at 697. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *United States v. Datavs*, 71 M.J. 420, 424-25 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 697).

That is the course we follow here. Regardless of whether trial defense counsel's performance was deficient, the appellant has failed to demonstrate prejudice.

In reaching that conclusion, we consider the positive and negative impacts of the specific evidence on the findings and sentence. In this case, the evidence comprised circumstantial testimony about the appellant's internet search history as limited by carefully tailored instructions. Discussed by both parties for a relatively short period during lengthy closing arguments, the testimony received even more restrained mention during sentencing arguments.

9

We balance any impact against the overwhelming weight of the other evidence, including the traumatic penetration injuries suffered by ARM; ARM's excited utterances and demeanor after the assault; the DNA and biological evidence from the sexual assault examinations; the appellant's false exculpatory statement; and the compelling victim impact testimony provided by ARM and her mother. Taken together, the appellant has failed to show that there is a reasonable probability that the court-martial result would have been different even if the defense's suppression motion had succeeded.

Since we conclude the appellant was not prejudiced by any alleged error, we do not reach whether trial defense counsel's decision not to file a motion to suppress evidence discovered during the search of his computer constituted deficient performance.

## Conclusion

After careful consideration, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ. The findings and the sentence are therefore affirmed.

For the Court



R.H. TROIDL
Clerk of Court