# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CHRISTOPHER B. HUKILL**
**United States Army, Appellant**

ARMY 20140939

Headquarters, Fort Campbell
Steven E. Walburn, Military Judge
Colonel Susan K. Arnold, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Katherine L. DePaul, JA (on brief); Lieutenant Colonel Melissa R. Covolesky, JA; Captain Katherine L. DePaul, JA (on reply brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Anne C. Hsieh, JA (on brief).

9 August 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of rape and one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. 920  (2012).  The military judge sentenced appellant to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged.

This case is before this court for review pursuant to Article 66, UCMJ.  In his sole assignment of error appellant alleges ineffective assistance of counsel.  We find this allegation of error to be without merit as appellant has not established prejudice

in his case. The matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), do not warrant relief.

## BACKGROUND

Appellant stands convicted of sexually assaulting AB and HG, both friends of appellant's girlfriend, CC, at the time.

On or about 4 April 2014, appellant digitally penetrated the vagina of AB against her will in the kitchen of his house, after leaving a party at AB's house with AB in order to procure liquor. He only stopped his assault when she threatened him with a knife. A week or two after this incident, while at a bar, AB told CC what had happened. When CC asked appellant if he had relations with AB, appellant responded "yes." This admission was made in the presence of AB, who thereafter proceeded to slap the appellant.

Approximately two weeks after the assault of AB, appellant touched the genitalia of HG against her will after taking her to his house after a night of drinking by HG. HG was highly intoxicated and vomited multiple times on the drive to appellant's house. Appellant touched the genitalia of HG while bathing her, dressed her in thong underwear, laid beside her in bed, and reached underneath her underwear to touch her vagina. At some point later, HG told CC what had happened. When CC confronted appellant via text message, appellant admitted to bathing, clothing, and then "comforting" HG

In a later interview with an agent from the U.S. Army Criminal Investigation Command (CID), appellant acknowledged going home with HG, giving her a bath, drying her off, and putting her to bed, though he claimed there was "no sexual anything."

Appellant's counsel did not provide an opening statement at trial. Appellant testified at trial concerning the allegation involving AB,[1] and on cross-examination contradicted a statement he had given to law enforcement that AB had showed him her breasts and private area prior to the incident at his house. During the sentencing portion of the trial, appellant's defense counsel did not object to the direct testimony of both AB and HG that they had been sexually abused as children.

---

[1] Appellant did not testify concerning the incident with HG; the government, however, introduced as a prosecution exhibit a DVD of appellant's interview with CID about this offense.

**LAW AND DISCUSSION**

*Ineffective Assistance of Counsel*

In his assignment of error appellant alleges he was denied his sixth amendment right to the effective assistance of counsel where his trial defense counsel failed to adequately prepare him to testify in his own defense, failed to deliver an opening statement, and failed to object to improper aggravation evidence during pre-sentencing proceedings.

Appellant, in a statement made under penalty of perjury and through his appellate defense counsel, alleges that his trial defense counsel were ineffective. Appellant alleges that his defense counsel did not instruct him on how to testify because he was informed testifying would be a bad idea and there was no need. Appellant states:

> The only time me testifying came up was in a recess during my court-martial, about 5 minutes before I took the stand. Without explanation, my defense counsel now advised me that I needed to testify. My counsel did not go over what questions they would ask me on direct examination, nor did they go over what questions I might be asked on cross-examination. We did not go over any questions at all. Because of this, I felt extremely unprepared to testify and very confused. Before my trial, I met with my primary legal counsel only about 5 times. I did not meet my secondary counsel until the day of trial.

Upon order from this court, appellant's trial defense counsel filed affidavits responding to appellant's allegations. Their affidavits directly contradict appellant's claim regarding his testimony. They claim they discussed the possibility of appellant testifying, and

> [w]hile we did not conduct a rehearsal of the direct examination, we had explained that if he did testify, it would be a recounting of the events with AB and HG on the days relevant. [Specialist] Hulkill had explained, on more than one occasion, what his recollection of the events with AB and HG had been with little deviation from that story. Therefore, we were confident he would provide cogent responses on direct examination. I recall explaining the Government would likely ask questions of him on cross-examination relating to his statements to law enforcement.

Counsel explained the decision to forego an opening statement as a tactical decision based upon experience with military judge-alone trials. Regarding the lack of objection to the government questions that elicited AB's prior sexual abuse history, the counsel responsible for the cross-examination of AB stated "in retrospect, an objection was appropriate IAW RCM 1001(b)(4)." The counsel responsible for the cross-examination of HG stated he made a tactical decision not to object to HG's testimony regarding her previous assaults

> because those facts would be helpful to rebut the government's potential argument that the accused alone was to blame for the victim's current condition (i.e. not all the victim impact presented was a result of the charged misconduct by the accused.) This is especially true when there is no evidence that the accused knew about the prior sexual assaults. Further, in this case, when the victim testified that she previously overcame her prior assault, the victim's resiliency also can operate to mitigate the long-term impact to the victim.

Finally, counsel serving as second-chair counsel stated he met with appellant in-person to discuss the case "on at least three occasions from October 2014 to December 2014. [Specialist] Hulkill's recollection that I first met him at trial is completely inaccurate."

To support an ineffective assistance of counsel claim, appellant must meet a two-prong test that his defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010). We have the authority to resolve an ineffectiveness claim on the prejudice prong, without resolving the first prong.[2] *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Upon review of the record, appellant has not met his burden of establishing prejudice, that being "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 468 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

---

[2] That we skip to the prejudice prong is not a concession that counsel's performance was deficient; we simply need not resolve that question here.

HUKILL—ARMY 20140939

Here, the affidavits are in material factual conflict regarding appellant's decision to testify and his counsels' advice to him about testifying. However, we need not order an evidentiary hearing in this case because "the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor." *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

Appellant has not met his burden of prejudice. We are convinced the result would have been the same if counsel had provided an opening statement, appellant had not testified or testified differently, and counsel had objected to sentencing testimony regarding the prior abuse of the victims. Simply, the government presented a strong case against appellant.

The victims, AB and HG, testified credibly about the crimes appellant committed against them. CC testified to appellant's acknowledgement that he had relations with AB, which also served to undermine appellant's testimony on direct that no physical contact had occurred. Appellant acknowledged to *both* CC and CID most of the facts surrounding the offense against HG. With CC, he also acknowledged "comforting" HG, further corroborating physical contact with her. We are convinced beyond a reasonable doubt that that the appellant took this opportunity-with a naked or largely naked, vulnerable, intoxicated woman-to sexually assault her. The government's case was compelling. Consequently, appellant has not presented us with a reasonable probability of a different result.

**CONCLUSION**

On consideration of the entire record, the findings and sentence as approved by the convening authority are AFFIRMED.

Judge CELTNIEKS and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

5