*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Adam M. JACKS**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellant*

**No. 202000098**

Decided: 20 September 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Keaton H. Harrell (arraignment)
Kyle G. Phillips (trial)

Sentence adjudged 16 December 2019 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 16 months,[1] and a bad-conduct discharge.

For Appellant:
*Captain Jeremiah J. Sullivan III, JAGC, USN*

_____

[1] Pursuant to a pretrial agreement, the convening authority suspended confinement in excess of the time Appellant served in pretrial confinement (308 days).

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of two specifications of larceny, one specification of adultery, one specification of fraternization, one specification of conspiracy to obstruct justice, one specification of conspiracy to commit larceny, and one specification of unauthorized absence terminated by apprehension, in violation of Articles 81, 86, 92, 121, and 134, Uniform Code of Military Justice [UCMJ],[2] for conspiring to steal and stealing an All-Terrain Vehicle [ATV] and a dirt bike, conspiring to move them to impede the resulting investigation, engaging in a sexual relationship with a married officer, and absenting himself without authority for seven weeks until he was apprehended.

Appellant asserts two assignments of error: (1) his trial defense counsel were ineffective for failing to present expert testimony regarding Appellant's Traumatic Brain Injury [TBI], Post-traumatic Stress Disorder [PTSD], and other mental and behavioral issues; and (2) the sentence is highly disparate and inappropriately severe. We find no prejudicial error and affirm.

## I. BACKGROUND

In the spring of 2018, Appellant conspired with Staff Sergeant (E-6) [SSgt] Bravo to steal an ATV and a dirt bike. Staff Sergeant Bravo executed the plan, used Appellant's truck to steal the vehicles, and stored them in Appellant's garage. Appellant and SSgt Bravo then conspired with SSgt Golf to move the vehicles in order to impede the investigation into their disappearance. During this time, Appellant was also having a sexual relationship

———————————

[2] 10 U.S.C. §§ 881, 886, 892, 921, 934.

with a married Marine officer. Six months later, while under investigation for these and other offenses, he went absent from his unit without authority for approximately 50 days until he was apprehended by law enforcement.

Prior to this course of misconduct, Appellant's record of service includes four combat deployments from 2006 to 2011, during which he was frequently in firefights. During the last of these deployments, Appellant stepped on an Improvised Explosive Device [IED] while attempting to burn down an enemy observation post, resulting in the amputation of his right leg and the loss of feeling in his left. Despite his physical injuries, Appellant voluntarily remained on active duty and passed a board to retain his infantry Military Occupational Specialty. At trial, Appellant gave an unsworn statement detailing that he had been diagnosed with TBI and PTSD due to the IED blast and his deployments. He described the symptoms of his memory issues, behavioral issues, and loss of sleep and appetite. He discussed his treatment at the National Intrepid Center of Excellence, where specialized doctors had created care plans and prescribed medication to treat his TBI and PTSD. He also spoke of his diagnosis of lymphedema and several follow-on or "revision" surgeries to his right leg.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are reviewed de novo.[3] "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[4] "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."[5] There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [accused] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[6] "A trial defense

---

[3] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted).

[4] *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[5] *Strickland*, 466 U.S. at 700.

[6] *Id.* at 689 (internal quotations and citation omitted).

counsel's decision on whether to call a witness is a tactical decision."[7] Regarding the prejudice prong, "[t]he [accused] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[8]

Appellant asserts that by failing to present expert testimony at trial regarding his medical and mental health issues, his trial defense counsel failed to offer powerful mitigating evidence. However, we have consistently held that introducing evidence of an appellant's PTSD and TBI through lay witness testimony and unworn statements, instead of through expert testimony or documents, is not deficient performance by trial defense counsel.[9] Rather, the decision to introduce evidence of an appellant's PTSD and TBI in sentencing via testimony or unsworn statement is "a reasonable tactical choice."[10]

Here, Appellant discussed his PTSD and TBI on the record at length, along with his combat deployments, treatments, surgeries, medications, and additional injuries. Trial defense counsel also admitted Appellant's medical records, which discussed his TBI and several other symptoms and injuries. During sentencing argument, trial defense counsel referenced Appellant's mental health issues and stated that "[t]he judge has had enough experience in this job as well as career to know what the fellow Marines are going through mentally based upon all the conflicts over the last 10 to 12 years."[11] Based on the record before us, we find that trial defense counsel's decision to introduce evidence of Appellant's TBI and PTSD via Appellant's unsworn statement and documentary evidence instead of through an expert witness was a reasonable tactical decision. We therefore conclude that trial defense counsel's performance was not deficient.

---

[7] *United States v. Gardiner*, No. 201600337, 2017 CCA LEXIS 774 at *8 (N-M. Ct. Crim. App. Dec. 28, 2017) (unpublished) (citing *United States v. Akbar*, 74 M.J. 364, 390 (C.A.A.F. 2015)).

[8] *Strickland*, 466 U.S. at 694.

[9] *E.g., United States v. Cox*, No. 201700197, 2018 CCA LEXIS 523 at *16–20 (N-M. Ct. Crim. App. Nov. 1, 2018) (unpublished); *United States v. Smith*, No. 200501482, 2007 CCA LEXIS 191 at *12–15 (N-M. Ct. Crim. App. June 6, 2007) (unpublished).

[10] *Cox*, 2018 CCA LEXIS 523 at *19.

[11] R. at 304.

**B. Sentence Disparity and Severity**

Military courts of criminal appeals [CCA] have two duties in approving sentences under Article 66(c), UCMJ: first to ensure the sentence is "correct in law" and second to ensure the imposed sentence "should be approved."[12] In making these determinations, we must do so on the basis of the entire record.[13] "Generally, sentence appropriateness should be judged by individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[14] However, in reviewing whether a sentence "should be approved," our "authority to grant relief is not without limits" because "Article 66(c), UCMJ, empowers the CCAs to do justice, with reference to some legal standard, but does not grant the CCAs the ability to grant mercy."[15]

We may consider other court-martial sentences when determining sentence appropriateness for any case, but are only required to do so "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases."[16] "We generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement . . . ."[17]

Appellant asserts the sentence he received is highly disparate and inappropriately severe because he received a bad-conduct discharge. We disagree. Appellant received the benefit of the deal that he bargained for with the convening authority. In his pretrial agreement, Appellant accepted terms that exposed him to an approved bad-conduct discharge in exchange for substantial confinement protection. During its sentencing argument, the Government asked for 18 months' confinement, reduction to E-1, total forfeitures, and a dishonorable discharge.[18] Trial defense counsel asked for ten months' confinement and even asked the military judge to consider

---

[12] *United States v. Guinn*, 81 M.J. 195, 199 (C.A.A.F. 2021).

[13] *United States v. Jessie*, 79 M.J. 437, 440 (C.A.A.F. 2020).

[14] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982).

[15] *Guinn*, 81 M.J. at 203 (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)) (internal quotation marks omitted).

[16] *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001).

[17] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172 at *7 (N-M. Ct. Crim. App. Mar. 22, 2016).

[18] R. at 299.

adjudging a bad-conduct discharge if he deemed a punitive discharge appropriate.[19]

Appellant was convicted of a significant amount of criminal misconduct. At the time of his pleas, Appellant's maximum sentence exposure for the offenses to which he pleaded guilty was reduction to pay grade E-1, confinement for 24 years and six months, total forfeitures, and a dishonorable discharge. The sentence he ultimately received—reduction to E-1, confinement for 16 months (suspended above 308 days by the pretrial agreement), and a bad-conduct discharge—is considerably less than this maximum. That Appellant continued to serve his country even after losing a limb in combat and suffered a host of other mental and physical challenges and injuries as a result of his service does not excuse his behavior or actions. The law requires that the individual and lifelong sacrifices Appellant made for his country must be taken into account for sentencing, and the record shows that they were.

Even if we were to disregard Appellant's bargained-for exchange in his pretrial agreement, his sentence is not inappropriately severe or highly disparate in comparison with the sentences of his co-conspirators. SSgt Bravo pleaded guilty to one specification of conspiracy to commit larceny, three specifications of larceny of personal property, and two specifications of obstruction of justice, and was sentenced to reduction to E-1, confinement for 14 months, and a bad-conduct discharge. SSgt Golf pleaded guilty to conspiracy to commit larceny and conspiracy to obstruct justice, five specifications of larceny of personal and military property, and one specification of obstruction of justice, and was sentenced to reduction to E-1, confinement for 24 months, and a bad-conduct discharge. Assuming that Appellant's additional, separate crimes do not preclude his case as a whole from being considered "closely related" to those of his co-conspirators, we do not find that the sentences are highly disparate.

We find that Appellant's sentence was adjudged with individualized consideration based on both the nature and seriousness of his offenses and Appellant's character and record of service. After reviewing the record as a whole, we find that the sentence is correct in law, that it appropriately reflects both what was bargained for in the pretrial agreement and what was presented in extenuation, mitigation, and aggravation at trial, and that it should be approved.

---

[19] R. at 303–04.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[20]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[20] Articles 59 & 66, UCMJ.